**James A. SHRIVER, Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 89–1015.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1989.

Decided March 28, 1990.

Rehearing and Rehearing En Banc Denied May 16, 1990.

Thomas F. Topel, Billings, Mont., for appellant.

David M. Moore, Washington, D.C., for appellee.

Before FAGG and BEAM Circuit Judge, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Petitioner-appellant James A. Shriver appeals the decision of the United States Tax Court[1] which found tax deficiencies for 1980 and 1981 of $23,549.00 and $30,846.00, respectively, due to improperly claimed tax deductions in connection with the sale and leaseback of certain computer equipment. The court found that the transaction in question was a sham, to be disregarded for tax purposes, because it had no non-tax purpose and was without potential for economic profit. This is one of several cases which have been selected as representative test cases arising from commercial transac-

---

1. The Honorable Lapsley W. Hamblen, Jr.,      Judge, United States Tax Court.

tions involving Finalco, Inc. ("Finalco"). We affirm.

The tax court set out in detail the facts incident to the sale and leaseback transaction in which Shriver involved himself. 54 T.C.M. (CCH) 1422, 23–28 (1987). We need not repeat such facts at length. Instead, we summarize the facts pertinent to resolution of the question before us, that is, whether the tax court erred when it determined that the losses mentioned above were improperly deducted.

Shriver is a sixty-six year old resident of Watertown, South Dakota, who has a high school education and owns an automotive parts dealership. In 1980 he contacted his accountant, Albert Schweiss, to discuss investments. Schweiss was a Certified Public Accountant (CPA) with the firm of McGladrey Hendrickson & Company ("McGladrey").

Schweiss mentioned the possibility of an investment in computer equipment. He subsequently performed certain analyses which determined that residual value[2] would be critical to an economic profit from such an investment.

Schweiss asked Michael Miller, also a CPA and member of McGladrey, to examine the issue of residual value of the specific computer equipment which Shriver contemplated purchasing. Miller specialized in computers and computer systems. Miller opined that if the equipment were to be used for accounting applications, it had a high probability of residual value; on the other hand, if the application was instead for telecommunications purposes, probability of residual value would be low. Schweiss contacted the end user, Pacific Telephone and Telegraph Company ("Pacific"), and was informed that the equipment would be used for accounting purposes. Petitioner relied heavily on Schweiss's advice in deciding to proceed with the investment.

Although the tax court carefully laid out the specifics of the complicated commercial transaction in its opinion, the fundamental aspects of the deal follow. Shriver purchased from Lease Pro, Inc. the computer equipment—peripheral components to the Burroughs B7800 System, subject to an end-user lease with Pacific—and then Shriver leased the equipment to Finalco. The lease was in essence a leaseback to Finalco, since Finalco had previously sold the computer equipment to Lease Pro.

## I.

The legal issue we must resolve is whether the transaction in question was a sham and therefore to be disregarded for tax purposes. *See Gregory v. Helvering,* 293 U.S. 465, 469–70, 55 S.Ct. 266, 267–68, 79 L.Ed. 596 (1935); *Higgins v. Smith,* 308 U.S. 473, 477, 60 S.Ct. 355, 357–58, 84 L.Ed. 406 (1940). The parties seem to agree that the issue is to be analyzed under the sham transaction analysis, as articulated in *Frank Lyon Co. v. United States,* 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978). In what has become widely recognized language among members of the tax bar, in *Frank Lyon* the Supreme Court held:

> where ... there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax avoidance features that have meaningless labels attached, the Government should honor the allocation of rights and duties effected by the parties.

*Id.* at 583–84, 98 S.Ct. at 1303–04.

The sham transaction doctrine of *Frank Lyon* was subsequently construed in *Rice's Toyota World, Inc. v. Commissioner,* 752 F.2d 89 (4th Cir.1985). In *Rice's Toyota World* the Fourth Circuit determined that *Frank Lyon* countenanced a two-part test. *See id.* at 91–92. That is, a transaction is a sham if (1) it is not motivated by any economic purpose outside of tax considerations, and (2) is without economic substance

---

**2.** For these purposes, residual value means the value of computer equipment to Shriver at the termination of an end-user lease.

because no real potential for profit exists. *See id.*

We first examine the question whether the tax court's findings meet the criteria of the two-part test approved in *Rice's Toyota World.*

Shriver does not contest the finding by the tax court that the transaction in question is without economic substance. The economic substance inquiry "requires an objective determination of whether a reasonable possibility of profit from the transaction existed apart from tax benefits." *Id.* at 94. Since such a determination clearly was made by the tax court, Opinion at 1431, we move on to consider the "business purpose" prong of the sham analysis.

Shriver argues that the tax court failed to adequately apply the requisite two-pronged analysis of *Rice's Toyota World,* instead "collapsing" the business purpose inquiry into the question of economic substance. We review the record to ascertain what inquiry, if any, was conducted with regard to the "business purpose" prong of the test. *See id.* at 91–92.

■ The business purpose inquiry examines whether the taxpayer was induced to commit capital for reasons only relating to tax considerations or whether a non-tax motive, or legitimate profit motive, was involved. *See id.* The determination of whether the taxpayer had a legitimate business purpose in entering into the transaction involves a subjective analysis of the taxpayer's intent. *Kirchman v. Commissioner,* 862 F.2d 1486, 1492 (11th Cir.1989). In the instant case, the tax court in its opinion made the finding that Shriver did not meet the business purpose test. Opinion at 1429. Because Shriver relied solely on Schweiss with regard to the investment, because Schwiess's inquiries and analysis were flawed,[3] and finally because it determined that much of the testimony as to Shriver's motivation for the investment was "self-serving," the tax court held that "petitioner did not manifest a subjective business purpose." Opinion at 1429.

■ Although the tax court's analysis of the business purpose prong of the sham analysis was brief in comparison to its counterpart analysis of economic substance, we do not accept Shriver's argument that the tax court did not give adequate attention to that side of the equation. It is enough, we believe, that the tax court considered the question, weighed the evidence before it—including the credibility of Shriver's witnesses—and specifically determined on the record that no subjective non-tax business purpose existed. Although a finder of fact could have concluded otherwise, this is not sufficient grounds for reversal. *See generally Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (noting that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"). We will not reverse a factual finding by the tax court unless it is clearly erroneous, *Reading v. Commissioner,* 614 F.2d 159, 160 (8th Cir.1980) (per curiam), and we find no such error here.

For the reasons set out above, we determine that the tax court found *both* a lack of business purpose and a lack of economic substance, thereby performing the necessary analysis to determine that the transaction was actually a sham under *Rice's Toyota World.*

## II.

Although we elect also to address the question of whether the two-part test applied in *Rice's Toyota World* is mandated by the *Frank Lyon* sham-transaction analysis, the following discussion only provides an alternative basis for our holding.

Assuming the tax court's opinion did not apply a two-part test, we ask whether the court's clear finding of a lack of "economic substance," that is, the absence of any real

---

**3.** For example, the analysis of Schweiss and Miller determined that renewal of the lease by Pacific would be at a rate which was equal to seventy per cent of the current end-user lease. This amount was assumed to be $80,000.00 per year, despite the fact that the end-user lease provided for an annual rent of $78,518.36 and contained an option renewal for one year at no cost.

chance for profit associated with the transaction, is enough *standing alone* to support that court's decision. Although we need not reach this issue, that is—whether there is a requirement for a two-part analysis—we do so to point out that such a requirement is far from settled law, notwithstanding Shriver's protestations.

First, we do not read *Frank Lyon* to say anything that mandates a two-part analysis. And although *Rice's Toyota World* seems to conclude a two-part test is consistent with *Frank Lyon,* the Fourth Circuit opinion does not appear to hold that such a test is essential. *See Rice's Toyota World,* 752 F.2d at 92. ("We agree [the two-part] ... test properly gives effect to the mandate of the Court in *Frank Lyon* that a transaction cannot be treated as a sham unless the transaction is shaped solely by tax avoidance considerations.") This language indicates that a two-part test works; but it *does not* declare it to be the only test or analysis which will suffice. The Fourth Circuit has in fact not required rigid formality in the application of the two-part test. *See Freidman v. Commissioner,* 869 F.2d 785, 792 (4th Cir.1989) (holding that although tax court did not apply the "exact test" of *Rice's Toyota World,* there was nevertheless ample support for the court's finding of a sham transaction). We find no rigidity or inflexibility in either *Frank Lyon* or *Rice's Toyota World.*

We also note that our sister circuits have refrained from adopting a rigid two-part test. *See Kirchman,* 862 F.2d at 1492 ("It is clear that transactions whose sole function is to produce tax deductions are substantive shams, *regardless of the motive* of the taxpayer") (emphasis added); *Sochin v. Commissioner,* 843 F.2d 351, 354 (9th Cir.) ("[W]e did not intend ... to outline a rigid two-step analysis. Instead, the consideration of business purpose and economic substance are simply more precise factors to consider in the application of this court's traditional sham analysis; that is, whether the transaction had any practical economic effects other than the creation of income tax losses."), *cert. denied,* —— U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988); *Rose v. Commissioner,* 868 F.2d 851, 854 (6th Cir. 1989) ("Whether characterized as a 'generic tax shelter' test or a two-prong subjective/objective analysis, the essential inquiry is whether the transaction had any practicable economic effect other than the creation of economic tax losses.").

Moreover, the tax court itself, in *Cherin v. Commissioner,* 89 T.C. 986, 993 (1987) stated: "We have never held that the mere presence of an individual's profit objective will require us to recognize for tax purposes a transaction which lacks economic substance." Considering all of the above, we do not believe the tax court erred in its determination that the transaction in question was a sham, thereby precluding the losses generated therein from being deducted for tax purposes. We therefore affirm the determination of the tax court in all regards.