CHARLES J. HAUSER AND PATRICIA L. HAUSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hauser v. Commissioner
Docket No. 15683-90
United States Tax Court
T.C. Memo 1992-641; 1992 Tax Ct. Memo LEXIS 671; 64 T.C.M. (CCH) 1226; T.C.M. (RIA) 92641; November 3, 1992, Filed Decision will be entered for respondent except as to additions to tax under section 6659(a). For Petitioners: Mark E. Gammons. For Respondent: Jeffry J. Erney. GALLOWAY
GALLOWAY
MEMORANDUM OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' income tax, and additions to tax as follows: Section
Section
Year
Deficiency
6653(a)(1)
6653(a)(2)
1983
$ 1,451.00
$ 72.55
[1]
1984
93.00
4.65
[1]
1986
3,971.00
--
--
Section
Section
Section
Year
6653(a)(1)(A)
6653(a)(1)(B)
6659(a)
1983
--
--
$   435.30
1984
--
--
27.90
1986
$ 198.55
[1]
1,191.30
*672 The issues for decision are: (1) Whether petitioners are entitled to deduct the amount of $ 3,125 as a loss in 1986 under section 165; and (2) whether petitioners are liable for additions to tax pursuant to section 6653(a)(1) and (2) for the years 1983 and 1984, and section 6653(a)(1)(A) and (B) for the year 1986, and for increased interest pursuant to section 6621(c) for the years 1983 and 1986. Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Burton, Ohio, when their petition was filed with this Court. 1. Section 165 Loss
a. Background
During the years in issue, Charles J. Hauser (petitioner), was a mill worker employed by B&B Wood Products, Inc. Mrs. Hauser was a librarian. Petitioner's accountant in 1986 was Thomas Graham of Graham & Associates. Mr. Graham was also a chartered (sales) representative of Structured Shelters, Inc. (SSI), which had been organized in 1979 for the purpose of marketing tax-advantaged investments on a nationwide basis to interested investors. See Rybak v. Commissioner, 91 T.C. 524, 525-526, 562 (1988). *673 [1]
In 1986, Mr. Graham and his associate, Joe Tribble, were soliciting clients to invest in a venture described by the parties as the "Pairware Development & Research Shelter Promotion" (Pairware Shelter Promotion). Petitioner was given no investment promotional material by Graham & Associates to review concerning the Pairware Shelter Promotion. However, petitioner was furnished with a printed document captioned "Software Development Agreement" (the Agreement), which related to the development of personal computer software. Petitioner was urged to invest in the Pairware Shelter Promotion by Graham & Associates by executing the Agreement. Prior to executing the Agreement (a copy of which petitioner entered in evidence), *674 petitioner did not consult with anyone in the personal computer software industry concerning the Pairware Shelter Promotion investment opportunity. All information received by petitioner relating to the Pairware Shelter Promotion was from Mr. Graham or Mr. Tribble. Under the terms of the Agreement executed by petitioner with T.E.S.T., Inc., (the Contractor), on December 30, 1986, the Contractor agreed to develop for petitioner personal computer software for a computer software product described as the "New Product". The New Product was designed to be used as "game software" in schools from the elementary to college level and was represented to be "educational, entertaining and challenging". The terms of the Agreement provided that petitioner, if development of the New Product was successful, intended to manufacture and sell the New Product units by himself, through a joint venture, or through the sale or license of the computer software product to others. Petitioner agreed to pay the Contractor for its services the amount of $ 23,750. A downpayment of $ 3,125 cash payable on or before December 31, 1986, was required, with the balance due of $ 20,625 payable on or before December *675 31, 1991. Petitioner invested $ 3,125 cash on December 30, 1986, in the Pairware Shelter Promotion pursuant to the Agreement upon the recommendation of his accountants and shelter promoters, Graham & Associates. In 1986, petitioner prepared a Schedule C on which he reported deductions from the Pairware Shelter Promotion as follows: Research and development expenses
$ 23,750
Tax preparation
155
Random processing
100
Business planning
370
Total
$ 24,375
With respect to the above "Research and Development" expense, totaling $ 23,750, petitioner elected under the provisions of section 174(a)(2) to adopt "the current expense method of treating research and experimental expenses under § 174(a)". On his 1986 return, petitioner reported a zero tax liability before claiming an investment credit totaling $ 1,544. Petitioner filed separate Forms 1045, Application for Tentative Refund, for the 1983 and 1984 tax years, in which he claimed investment credit carrybacks from the 1986 year, in the respective amounts of $ 1,451 and $ 93. In her notice of deficiency, respondent disallowed petitioner's claimed 1986 deduction of $ 24,375, the credit claimed on petitioner's 1986 return, *676 and the credits claimed for taxable years 1983 and 1984 pursuant to petitioner's Form 1045 Tentative Carryback Adjustment "with respect to software research and development". In the parties' stipulation of facts, petitioner conceded that respondent had correctly disallowed petitioner's claimed research and development, tax preparation, random processing and business planning deductions totaling $ 24,375, and petitioner's investment credits claimed on his 1983, 1984, and 1986, tax returns with respect to the Pairware Shelter Promotion. Petitioner also conceded that the Pairware Shelter Promotion was a sham and had no economic substance. Although petitioner admits that the $ 3,125 in issue was correctly disallowed by respondent as part of the sham Pairware Shelter Promotion transaction, he claimed for the first time at trial that the amount paid is nevertheless allowable as a deduction under section 165(c)(2) for "out-of-pocket" expenses incurred in a transaction entered into for profit. b. Discussion
Petitioner has the burden of establishing that he sustained a loss in a transaction entered into for profit in 1986. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *677 Respondent argues that petitioner has failed to show that a loss was sustained in 1986, or the amount of any loss incurred under section 165(c)(2). In addition, respondent contends that petitioner has failed to show that he had a profit motive when he entered into the Pairware Shelter Promotion transaction. Section 165 provides as follows: (a) GENERAL RULE. -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) LIMITATION ON LOSSES OF INDIVIDUALS. -- In the case of an individual, the deduction under subsection (a) shall be limited to -- (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * Section 1.165-1(b), Income Tax Regs., provides: "To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year." Petitioner's payment of the $ 3,125 in dispute was purportedly made to the Contractor pursuant to the Agreement for research and development of personal computer software products. However, *678 petitioner had little knowledge of the Pairware Shelter Promotion transaction for the development of personal computer software. He did not know when the development of the computer software was to begin, how long it would take, or its estimated cost. Petitioner also was unaware of the estimated manufacturing costs, the anticipated profits on units manufactured, and the entity or entities, if any, selected to manufacture and sell the New Product personal computer software. Petitioner was told by his accountants and shelter promoters that his 1986 investment would produce substantial tax benefits, but aside from stating he "was hoping to get tax credits", petitioner was unable to specify the nature of these tax benefits. Moreover, aside from the fact that petitioner received no return on or recovery of his investment, he was unable to relate other identifiable events that satisfied his burden of proving that he incurred a loss of $ 3,125 in 1986 under section 165(c)(2). The focus of petitioner's argument rests entirely on his claim that the amount in dispute is deductible because petitioner had a profit motive when he invested $ 3,125 in the Pairware Shelter Promotion in 1986. *679 Petitioner argues that his investment must be viewed as two separate transactions, in that "petitioners' expenditures can be found to have the requisite profit objective even though the underlying transaction was a sham". We disagree. Petitioner has failed to establish a profit motive for investing $ 3,125 cash in the Pairware Shelter Promotion. In King v. United States, 545 F.2d 700, 708 (10th Cir. 1976), the court held that "The reason underlying the need to establish profit motivation is that the ordinary loss deduction allowed by § 165(c)(2) was not intended to extend to a transaction lacking economic substance, amounting to nothing more than a sham." Because of petitioner's concession that the Pairware Shelter Promotion transactions lacked economic substance, petitioner cannot prevail notwithstanding his professed profit motive. See Cherin v. Commissioner, 89 T.C. 986, 993-994 (1987), where this Court held that the presence of a taxpayer's individual's subjective profit motive does not require the recognition for tax purposes of a transaction which lacks economic substance. In Jackson v. Commissioner, T.C. Memo. 1991-250, *680 affd. 966 F.2d 598 (10th Cir. 1992), we denied a deduction for "out of pocket cash losses" on the ground that the transaction lacked economic substance and stated that subjective intent of a profit cannot supply economic substance to a business transaction. Moreover, in Shriver v. Commissioner, 899 F.2d 724, 727 (8th Cir. 1990), affg. T.C. Memo. 1987-627, the court concluded, as an alternative basis for sustaining the denial of deductions claimed, that where there is a clear finding of a lack of economic substance it is enough, standing alone, to support a decision that a deduction is not allowable. In Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985), the Court of Appeals held that if a transaction is a complete sham, then such niceties as whether the test (for whether a transaction is "entered into for profit") is an objective or subjective one are simply not involved. Regardless of the definition, the transaction must be bona fide before losses are deductible. We conclude *681 for the above reasons, that petitioner is not entitled to a deduction in the year 1986 for the cash payment invested in the Pairware Shelter Promotion under section 165(c)(2) because that transaction lacked economic substance. Respondent is sustained on this issue. 2. Additions To Tax
Respondent determined that petitioners are liable for additions to tax for negligence under sections 6653(a)(1) and (2) and 6653(a)(1)(A) and (B). Sections 6653(a)(1) and 6653(a)(1)(A) impose an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Sections 6653(a)(2) and 6653(a)(1)(B) impose an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner claims he should not be liable for the negligence *682 additions to tax because he relied on the tax and investment expertise of accountant Thomas Graham and his associate Joe Tribble before making his Pairware Shelter Promotion investment. Here, when petitioner was advised by Mr. Graham and Mr. Tribble of the Pairware Shelter Promotion as an investment opportunity, he was given no promotional material concerning details of the Pairware Shelter Promotion. As stated above, petitioner at trial was aware of few details concerning the financial aspects of the Pairware Shelter Promotion investment. Petitioner relied on Mr. Graham's alleged reputation as being knowledgeable concerning tax and investments when investing in the Pairware Shelter Promotion, but failed to independently verify Mr. Graham's personal experience in computer software development. Petitioner made no inquiry of an outside attorney, accountant, or investment counselor, concerning the Pairware Shelter Promotion investment opportunity. Petitioner read no industry publications and did no research. He had no profit motive in investing in the Pairware Shelter Promotion. The failure of petitioner to consult independent advisers known to be experienced in the tax or investment *683 fields was not reasonable or in keeping with the standard of the ordinarily prudent person. LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. 956 F.2d 274 (9th Cir. 1992). There is no evidence that accountant Graham or his associate Mr. Tribble, had more than limited knowledge of the development, production, and distribution of personal computer software products. Petitioner's reliance on Mr. Graham's advice regarding the business aspects of this program cannot be regarded as reasonable. See Rogers v. Commissioner, T.C. Memo. 1990-619. We conclude therefore that the additions respondent determined under section 6653(a)(1) and (2) for the years 1983 and 1984, and section 6653(a)(1)(A) and (B) for the year 1986, must be sustained. 3. Increased Interest
Section 6621(c)(1) provides that "In the case of interest * * * with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest * * * shall be 120 percent of *684 the underpayment rate". Section 6621(c)(2) defines a substantial underpayment attributable to tax motivated transactions as "any underpayment of taxes * * * which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000." Section 6621(c)(3)(A)(v) defines a tax motivated transaction to include any sham or fraudulent transaction. The increased interest under the provisions of section 6621(c) is applicable because petitioner has conceded the Pairware Shelter Promotion was a sham and fraudulent transaction, and devoid of economic substance. Sec. 6621(c)(3)(A)(v). McCrary v. Commissioner, 92 T.C. 827, 857 (1989); Patin v. Commissioner, 88 T.C. 1086, 1128-1129 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988); affd. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). *685 Accordingly, petitioner is liable for the increased interest under section 6621(c) for the years 1983 and 1986. Decision will be entered for respondent except as to additions to tax under section 6659(a).
Footnotes
1. 50 percent of the interest due on the entire deficiency. Respondent also determined that petitioners are liable for increased interest under section 6621(c)↩. At trial, petitioner conceded the deficiencies determined for 1983 and 1984. Respondent conceded that petitioners are not liable for the addition to tax under section 6659 for the years 1983, 1984, and 1986.
1. Mr. Graham has acted as an SSI representative in marketing various tax-motivated investments for other taxpayers who have appeared before this Court. See Ryall v. Commissioner, T.C. Memo. 1992-103; Foys v. Commissioner, T.C. Memo. 1992-81↩.