WILLIAM S. WARD AND MARY ELIZABETH WARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 15283-90
United States Tax Court
T.C. Memo 1992-640; 1992 Tax Ct. Memo LEXIS 672; 64 T.C.M. (CCH) 1222; T.C.M. (RIA) 92640; November 3, 1992, Filed Decision will be entered for respondent. For Petitioners: Mark E. Gammons. For Respondent: Dawn M. Krause. GALLOWAY
GALLOWAY
MEMORANDUM OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' income tax, and additions to tax as follows: Additions to Tax
Taxable
Section
Section
Section
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1986
$ 6,626.00
$ 331.00
[1]
$ 1,657.00
After concessions by petitioners, the issues for decision are: (1) Whether petitioners are entitled to deduct the amount of $ 6,750 as a loss in *673 1986 under section 165; and (2) whether petitioners are liable for additions to tax pursuant to sections 6653(a)(1)(A) and (B) and 6661, and for increased interest pursuant to section 6621(c) in the year 1986. Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Wooster, Ohio, when their petition was filed with this Court. 1. Section 165 Loss
a. Background
During 1986, William S. Ward (petitioner), was an agency manager for State Farm Insurance Group. Mrs. Ward was a registered nurse. Petitioner's accountants in 1986 were Thomas Graham and his associate Ronald Berardinis, who prepared petitioner's 1986, 1987, and 1988 returns. Mr. Graham and Mr. Berardinis also were chartered (sales) representatives of Structured Shelters, Inc. (SSI), which had been organized in 1979 for the purpose of marketing tax-advantaged investments on a nationwide basis to interested investors. See Rybak v. Commissioner, 91 T.C. 524, 525-526, 562 (1988). [1]
*674 In 1986, petitioner's accountants were soliciting clients to invest in a venture described by the parties as the "Bingo Leasing promotion". Upon the recommendation of petitioner's accountants, petitioner invested $ 6,750 in the Bingo Leasing promotion by paying $ 6,750 cash to Fedco Trust on May 27, 1986. Petitioner, on a separate Schedule C attached to his 1986 return, designated his business as "Investing". Petitioner reported no gross income on the Schedule C, and a loss of $ 15,382, which included the following expenses: Advertising, $ 8,000; legal and professional services, $ 632; and lease expense of $ 6,750. On Schedule A of his 1986 return, petitioner deducted a financial planning fee totaling $ 665. Petitioner also claimed a 1986 research and development business credit amounting to $ 84. In the explanation of adjustments attached to her notice of deficiency dated April 9, 1990, respondent stated: It is determined that the deductions claimed on Schedule C of your 1986 income tax return, in the total amount of $ 15,382.00, with respect to Bingo Game Printing, are not allowable since you have not established that the activity was engaged in for profit, constituted a *675 trade or business, or involved property held for the production of income or that the activity had any economic substance. Respondent also disallowed in full petitioner's claimed financial planning fee and business credit. In the parties' stipulation of facts, petitioner conceded that respondent had correctly disallowed petitioner's claimed $ 15,382 Schedule C business expenses, financial planning fee, and business credit relating to petitioner's involvement in the Bingo Leasing promotion. Petitioner also conceded that the Bingo Leasing promotion transaction was devoid of economic substance and a sham. Finally, the parties stipulated that petitioner did not obtain an asset or rights to an asset from his involvement in the Bingo Leasing promotion, and that the Bingo Leasing promotion transaction did not constitute a trade or business. Although petitioner admits that the $ 6,750 in issue was correctly disallowed by respondent as part of the sham Bingo Leasing promotion transaction, he claimed for the first time at trial that the amount paid is nevertheless allowable as a deduction under section 165(c)(2) for "out-of-pocket" expenses incurred in a transaction entered into for *676 profit. b. Discussion
Petitioner has the burden of establishing that he sustained a loss in a transaction entered into for profit in 1986. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent argues that petitioner has failed to show that a loss was sustained in 1986, or the amount of any loss incurred under section 165(c)(2). In addition, respondent contends that petitioner has failed to show that he had a profit motive when he entered into the Bingo Leasing promotion transaction. Section 165 provides as follows: (a) GENERAL RULE. -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) LIMITATION ON LOSSES OF INDIVIDUALS. -- In the case of an individual, the deduction under subsection (a) shall be limited to-- (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * Section 1.165-1(b), Income Tax Regs., provides: "To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually *677 sustained during the taxable year." Petitioner's payment of the $ 6,750 in dispute was purportedly made for the lease of copyrights covering the production of Bingo card games. However, petitioner failed to testify as to the status in 1986 of the alleged Bingo card manufacturing company, or the corporations selected to allegedly distribute and market the Bingo games. No lease, production, or marketing agreements were in evidence. Petitioner was told by his accountant/investment promoters that his 1986 investment would result in a 15-20 percent return on his money in several years. However, aside from the fact that petitioner received no return on or recovery of his investment, petitioner was unable to relate sufficient financial details of the alleged transaction and other identifiable events which would prove that he sustained a loss of $ 6,750 in 1986 pursuant to section 165(c)(2). The focus of petitioner's argument rests entirely on his claim that the amount in dispute is deductible because petitioner had a profit motive when he invested $ 6,750 in the Bingo Leasing promotion in 1986. Petitioner argues that his investment must be viewed as two separate transactions, in that *678 "petitioners' expenditures can be found to have the requisite profit motive even though the underlying transaction was a sham". We disagree. Petitioner has failed to establish a profit motive by investing $ 6,750 cash in the Bingo Leasing promotion. In King v. United States, 545 F.2d 700, 708 (10th Cir. 1976), the court held that "The reason underlying the need to establish profit motivation is that the ordinary loss deduction allowed by § 165(c)(2) was not intended to extend to a transaction lacking economic substance, amounting to nothing more than a sham." Because of petitioner's concession that the Bingo Leasing transactions lacked economic substance, petitioner cannot prevail notwithstanding his professed profit motive. See Cherin v. Commissioner, 89 T.C. 986, 993-994 (1987), where this Court held that the presence of a taxpayer's individual's subjective profit motive does not require the recognition for tax purposes of a transaction which lacks economic substance. In Jackson v. Commissioner, T.C. Memo. 1991-250, affd. 966 F.2d 598 (10th Cir. 1992), we *679 denied a deduction for "out of pocket cash losses" on the ground that the transaction lacked economic substance and stated that subjective intent of a profit cannot supply economic substance to a business transaction. Moreover, in Shriver v. Commissioner, 899 F.2d 724, 727 (8th Cir. 1990), affg. T.C. Memo. 1987-627, the court concluded, as an alternative basis for sustaining the denial of deductions claimed, that where there is a clear finding of a lack of economic substance it is enough, standing alone, to support a decision that a deduction is not allowable. In Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985), the Court of Appeals held that if a transaction is a complete sham, then such niceties as whether the test (for whether a transaction is "entered into for profit") is an objective or subjective one are simply not involved. Regardless of the definition, the transaction must be bona fide before losses are deductible. We conclude for the above reasons, that petitioner is not entitled to a deduction *680 in the year 1986 for the cash payment invested in the Bingo Leasing promotion under section 165(c)(2) because that transaction lacked economic substance. Respondent is sustained on this issue. 2. Additions to Tax
a. Section 6653(a)(1)(A) and (B)
Respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a)(1)(A) and (B). Section 6653(a)(1)(A) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner claims he should not be liable for the negligence additions to tax because he relied on the alleged tax and investment expertise of *681 accountants Thomas Graham and Ronald Berardinis before making his Bingo Leasing investment. Petitioner had been a college friend of Mr. Graham and Mr. Berardinis. Here, when petitioner was advised by Mr. Graham and Mr. Berardinis of the Bingo Leasing promotion as an investment opportunity, he was given a "fact finding sheet" concerning details of the Bingo Lease transaction. However, as stated above, petitioner could recall few details at trial of the financial aspects of the Bingo Lease investment promotion. Petitioner argues that because of his and his wife's lack of knowledge of investments and tax matters, he relied on his accountants' reputation as experts in giving competent advice on taxes and investments. But, petitioner failed to independently verify his accountants' prior experience in bingo game investments or in giving tax advice. Petitioner also discussed the investment opportunity with his father-in-law (a successful business man). However, there is no evidence that the father-in-law had expertise or knowledge in taxes or the investment field. Petitioner made no inquiry of an outside attorney, accountant, or investment counselor, concerning the Bingo Leasing *682 investment opportunity. Petitioner read no industry publications and did no research. He had no profit objective in investing in the Bingo Lease shelter. The failure of petitioner to make a meaningful investigation beyond the promotional materials or to consult independent advisors known to be experienced in the tax or investment fields was not reasonable or in keeping with the standard of the ordinarily prudent person. LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. 956 F.2d 274 (9th Cir. 1992). There is no evidence that accountants Graham and Berardinis had more than limited knowledge of the production and sale of Bingo games. Accordingly, petitioner's reliance on their advice regarding the business aspects of this program cannot be regarded as reasonable. See Rogers v. Commissioner, T.C. Memo. 1990-619. We conclude therefore that the additions determined by respondent under section 6653(a)(1)(A) and (B) must be sustained. b. Section 6661(a)
Respondent *683 has also determined that the addition to tax under section 6661 applies in this case. Petitioner argues that the addition to tax should be waived on the ground that petitioner made the investment in good faith. Respondent contends that the deductions and credit claimed on petitioner's returns are attributable to a tax shelter and that petitioner is liable for the addition to tax since he has failed to show that there was substantial authority for his position and that petitioner reasonably believed the tax treatment of the items questioned was proper. We agree with respondent. Sec. 6661(b)(2)(C)(i). We also agree with respondent that petitioner has failed to show that respondent abused his authority in not waiving the addition to tax. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988). There is no showing of reasonable cause by petitioner for the understatement and that he acted in good faith. To the contrary, we have found that petitioner was negligent in claiming the deductions and credit and failed to make a good faith effort to determine the proper tax treatment of the tax items involved. See Mailman v. Commissioner, supra.
*684 3. Increased Interest
Section 6621(c)(1) provides that "In the case of interest * * * with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest * * * shall be 120 percent of the underpayment rate". Section 6621(c)(2) defines a substantial underpayment attributable to tax motivated transactions as "any underpayment of taxes * * * which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000." Section 6621(c)(3)(A)(v) defines a tax motivated transaction to include any sham or fraudulent transaction. The increased interest under the provisions of section 6621(c) is applicable because petitioner has conceded the Bingo Leasing promotion was a sham and fraudulent transaction, devoid of economic substance. Sec. 6621(c)(3)(A)(v). McCrary v. Commissioner, 92 T.C. 827, 857 (1989); Patin v. Commissioner, 88 T.C. 1086, 1128-1129 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988); affd. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), *685 affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). Accordingly, petitioner is liable for the increased interest under section 6621(c). Decision will be entered for respondent.
Footnotes
1. 50 percent of the interest due on $ 6,626.00. Respondent also determined that petitioners are liable for additional interest under section 6621(c)↩.
1. Mr. Graham has acted as an SSI representative in marketing various tax-motivated investments for other taxpayers who have appeared before this Court. See Ryall v. Commissioner, T.C. Memo. 1992-103; Foys v. Commissioner, T.C. Memo. 1992-81↩.